CARL M. FALLER  SBN: 70788
Attorney at Law
Post Office Box 912
Fresno, CA 93714
559-226-1534
carl.faller@fallerdefense,com

Attorney for Defendant Kendra Christine Snow

IN THE UNITED STATED DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No.: 1:08-cr-00008-002 LJO |
|---|---|
| Plaintiff, | ) |
| | ) SENTENCING MEMORANDUM ON |
| vs. | ) BEHALF OF DEFENDANT |
| | ) KENDRA CHRISTINE SNOW |
| KENDRA CHRISTINE SNOW, | ) |
| | ) Date:  October 31, 2008 |
| Defendant. | ) Time:  9:00 am |
| | ) Honorable Lawrence J. O'Neill |

TO:  THIS HONORABLE COURT, PLAINTIFF UNITED STATES OF AMERICA, AND IT'S ATTORNEYS OF RECORD, McGREGOR W. SCOTT, UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF CALIFORNIA AND KAREN A. ESCOBAR, ASSISTANT U.S. ATTORNEY.

Defendant Kendra Christine Snow presents this sentencing memorandum regarding the appropriate sentence to be imposed by the court.

<u>DEFENDANT'S PLEA</u>

On July 18, 2008, the defendant entered a plea of guilty to Count Two of the Indictment, Attempting to Interfere with the Safe Operation of an aircraft, in violation of  Title 18, United States Code, Sections32(a)(8) and 2.  The statutory maximum sentence is 20 years and/or a $250,000 fine and three years of supervised release.  There is no mandatory minimum sentence.

PRESENTENCE REPORT AND RECOMMENDATION

A Presentence Investigative Report was prepared by Senior United States Probation Officer Tim. D. Mechem. He recommended a sentence of 18 months imprisonment to be followed by a three-year term of supervised release. He also recommended a fine of $4,000.

DEFENDANT'S BACKGROUND AND PERSONAL HISTORY

The journey that brought Kendra Snow before this court began with family tragedies, compounded by substance abuse, mental health problems, and her reliance on people who enabled and assisted in her self-destructive life style.

Ms. Snow's early childhood was spent in southern California, where her father was a successful attorney. Her parents divorced when she was three years old, and she lived exclusively with her mother, who later married Lawrence Snow. Mr. Snow adopted Kendra, but he and her mother divorced in 1995. In 2004, her mother was violently murdered by her then-boyfriend. Throughout her life, Kendra's mother struggled with mental illness and drug abuse. Approximately two years later, her father was murdered in southern California when he was apparently beaten to death in his home by an intruder.

Following the death of her mother, Kendra fell prey to the same substance abuse problems that had plagued her mother and began using marijuana and methamphetamine. This led to a series of drug-related arrests and prosecutions in Kern County. She last used methamphetamine on December 14, 2007, the date of her arrest.

In addition to her significant substance abuse, Ms. Snow has also suffered from mental health issues, again, much like her mother. She began taking psychotropic medications at 19 and continued until the age of 23. She discontinued their use after the death of her mother, when she began abusing street drugs. Now, however, she is under the care of Dr. John Middleton, a psychiatrist, who has prescribed multiple medications which have stabilized her condition.

Following her arrest, Ms. Snow remained detained until March 27, 2008, when she was ordered released to the Westcare in-patient drug program upon the posting of a $27,000 property bond. She successfully completed the Westcare program, and on June 25, 2008, she was

released on her own recognizance. Since that date, she has performed successfully under pretrial supervision and has never tested positive for the use of any illegal substances.

During her treatment at Westcare, the staff urged Ms. Snow to sever her ties to codefendant Jared Dooley, due to his negative influence on her behavior and lifestyle, including her involvement in the incident which gave rise to these charges. Despite her history of following the dictates of other people and avoiding responsibility for her own actions, Ms. Snow followed the advice of her counselors and discontinued any contact with Mr. Dooley, and has maintained a sober, independent living situation since her release from the program. She has also sought employment, and has been willing to work as a volunteer at public agencies when she has not been able to secure a paid position.

## ADVISORY GUIDELINE CALCULATIONS

**Offense Level.**

The base offense level for the offense of conviction is 18. She has accepted responsibility for her actions, and is therefore entitled to a three-level reduction under Guideline Section 3E1.1(b). That results in an adjusted offense level of 15.

**Criminal History.**

The defendant has suffered five prior criminal convictions, all misdemeanors. These include three convictions for being under the influence of a controlled substance, as well as one for Assault With a Deadly Weapon and for Possession of Tear Gas. She received probationary sentences in the latter two cases.

Under Guideline Section 4A1.3, a defendant's criminal history may be reduced if "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes…" As noted above, three of the defendant's five misdemeanor convictions were for being under the influence of a controlled substance, a manifestation of her ongoing drug problem, which she was not able to address until her Westcare treatment this year. That self-destructive life style was exacerbated by her relationship with codefendant Dooley. In addition, the other two convictions were of such a minor nature that she received a combined

sentence of probation and one day in jail. In addition, all of these convictions occurred in a close time-frame of November, 2004 to April, 2007, when her life was spinning out of control. However, despite the absence of a single felony conviction, her total criminal history points place her in the second highest criminal history category, just below that of a career offender. This is an unconscionable result for a defendant who has committed such minor offenses in the past, the majority of which were related to her ongoing battle with drugs.

Based on the above, the defendant respectively submits that her criminal history should result in a finding of not more than Category III, which more accurately represents the extent and seriousness of her prior criminal activity.

**Post-arrest Rehabilitation.**

The post-arrest rehabilitation of the defendant is also worthy of consideration in determining her ultimate sentence. With the death of her mother, Ms. Snow embarked on a period of significant drug abuse which was aggravated by her mental health issues, for which she stopped taking her prescribed medication. Admittedly, she was given an opportunity through the drug court program in Kern County to abandon this self-destructive cycle and she chose to ignore it. However, once she was arrested in this matter, she terminated her use of controlled substances, successfully completed the Westcare in-patient program and has remained drug free while on pretrial supervision. In addition, the abandonment of the drug life has been accompanied by a new willingness on her part to sever ties with those influences which could compromise her progress. In pursuit of her new life, she has resided in Fresno, so that she would not be exposed to the negative influences in Bakersfield., This has been a difficult and painful task, but she is now in a sober living situation and is taking responsibility for the direction of her own life. To now impose a lengthly period of incarceration would only act to derail her new direction and push her back into the criminal world from which she has worked so hard to escape in recent months.

STATUTORY SENTENCING FACTORS

Pursuant to Title 18, United States Code, Section 3553(a), the court is required to impose a sentence which addresses the factors set forth therein. They are as follows:

**The nature and circumstances of the offense and the history and characteristics of the defendant** – While the offense at issue is admittedly serious, there is no evidence of any premeditation on the part of the defendant, nor any actual intent to damage the aircraft or harm the pilot. The instrument used in the offense was commercially available and was, in fact, purchased at Radio Shack. As has been chronicled in the reports and the statements of the defendant, she and her co-defendant were outside in the driveway of their home, shining the laser pointer up in the sky and watching the visual effects it produced. During the course of this activity, codefendant Dooley pointed it at the aircraft and when it came toward them, they ran inside the house. Their actions were dangerous, but not necessarily malicious and involved a single instance of that type of activity. A significant prison sentence is not indicated, absent some intent to cause harm or damage. Further, the defendant's prior criminal history is made up of primarily drug offenses and she has taken significant steps to leave that life behind during the pendency of this case. She is not the same person who was involved in the offense, and incarceration is not necessary to bring about a significant change in her behavior.

**The need for the sentence imposed** –

**To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense** – Ms. Snow is now a convicted felon and is subject to all of the penalties and disabilities that come with that status. Prosecution and conviction for a federal felony offense certainly promotes respect for the law. In addition, there was no intent to cause damage or physical harm, and therefore, a probationary sentence with alternate confinement constitutes just punishment for the particular facts of the offense, especially when one considers the efforts of Ms. Snow in the time following her arrest.

**To reflect adequate deterrence to criminal conduct** – Again, despite no intent to harm, Ms. Snow is now a convicted felon, and will retain that status for the rest of her life. She was arrested and held in custody in the Fresno County Jail for over three months, prior to being placed in the Westcare program. Her conviction, status as a felon, and her period of pretrial detention certainly acts as a deterrent to others. Also, this case is a demonstration of what can

happen to anyone who is involved in the abuse of drugs and will act as an incentive to take part in those programs that are offered to address that problem.

**To protect the public from further crimes of the defendant** – The post-arrest actions of the defendant in successfully dealing with her drug problem have done more to protect the future interests of the public than any sentence that the court would now impose.  Her prior criminal activity, even the offenses that were not actually drug offenses, was a product of her underlying drug and mental health issues.  These are now being addressed by the defendant through sober living and treatment.  Public safety can be adequately addressed through supervision.  Further, to ensure that she lives an ordered and regulated life, she has put a sizable inheritance which she is receiving, due to the death of her father, in a trust administered by her stepmother, who has continues to be a stabilizing force in her life.

**To provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner** – In abandoning the drug life, Ms. Snow is now in a position to successfully pursue educational and career objectives in the community.  In addition, she is receiving appropriate mental health care and cooperating by taking prescribed medication.

**The kinds of sentences available** – Because of Ms. Snow's success in beating her drug problem, and living a sober and independent life, home confinement is an appropriate alternative to actual imprisonment.

**The kinds of sentence and the sentencing range set forth in the guidelines** –
Ms. Snow's offense level is 15 and were it not for her over-represented criminal history score, a modest prison sentence would be indicated.  However, once we factor in her strides since arrest and her successful drug treatment, an additional period of home confinement is an appropriate sentence.

**The policy statements set forth in the guidelines** –  A period of home confinement will fulfill the policies set forth in the guidelines and there is no policy statement that would prevent such a sentence.

**The need to avoid any unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct** – A defendant with no prior felony convictions who was involved in similar activity, where there was no intent to damage the aircraft nor injure the pilot, should not receive a sentence in excess of that which Ms. Snow is seeking.

**The need to provide restitution to any victims of the offense** – Restitution is not an issue in this case.

## CONCLUSION

Kendra Christine Snow stands before the court to be sentenced for an offense which was the final act in a period of her life which was derailed by family tragedies and then spun out of control into mental illness and drug abuse.  Along the way, she was assisted and enabled by people, including the codefendant, who hoped to take advantage of her and share in an expected inheritance from her murdered father.  Against this backdrop of failure, Ms. Snow sought drug treatment during the pendency of this case and successfully completed the in-patient program at Westcare.  Based on that accomplishment, the court allowed her to be released on her own recognizance and she has remained drug free since that time.  In addition, she has broken from the negative influences in her life and is living independently and sober.

While it would inappropriate to minimize the danger of the activity involved in this case, it is also true that there is no evidence that Ms. Snow intended any damage or injury through her actions.  She has used this experience in a positive way to reorient you life, and an extended period of imprisonment would only operate to undo all that she has accomplished.  Her post-offense conduct has been exemplary and unusual.  All sentencing objectives would be met by a sentence including supervision and home confinement.

Dated:  October 24, 2008                                   Respectfully submitted,


                                                                          /s/  Carl M. Faller_____
                                                                          CARL M. FALLER
                                                                          Attorney for Defendant